# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.

Vladislav Doronin,
                Plaintiff

    v.

Swift Communications, LLC,
                Defendant

**COMPLAINT FOR DEFAMATION**

Plaintiff Vladislav Doronin ("Mr. Doronin" or "Plaintiff"), by and through his undersigned counsel, files this complaint against Defendant Swift Communications, LLC ("Swift"), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1. Mr. Doronin brings this lawsuit to restore his reputation and recover for the damage *The Aspen Times*, a newspaper operated by Defendant Swift, has inflicted through its publication of a highly defamatory Letter to the Editor (the "Letter") containing accusations that he bribed officials in the regime of Vladimir Putin, that his wealth is "corrupt" and "tainted" and that he is using his investment in Aspen real estate to launder money. Mr. Doronin, through counsel, requested that Defendant correct the Letter's falsehoods, but Defendant refused. Instead, *The Aspen Times* has chosen to weaponize the widespread negative sentiment toward the Russian Federation ("Russia") and sensationalize a false narrative that targets Mr. Doronin simply because he was born in what is today Russia in order to attack the development of a luxury resort in Aspen. The Letter's defamatory statements have caused and continue to cause significant reputational damage to Mr. Doronin and his businesses, including his recent substantial investment in Aspen real estate.

2. Both before and after *The Aspen Times* published the defamatory Letter, Mr. Doronin, through his agents and counsel, explained that its assertions are false. Although he was born in the Soviet Union, Mr. Doronin emigrated from that country before it collapsed. He has never been a Russian citizen. In 1993, Mr. Doronin founded Capital Group, a real estate development company in Russia. He has not been involved in the management or operations of Capital Group since 2014. He has never engaged in any bribery or other criminal conduct, as the Letter alleges. Mr. Doronin, both through Capital Group and his other businesses, earned his

wealth legitimately through the development and transformation of Soviet-era industrial real estate into modern office, retail, and residential properties for western companies.  Mr. Doronin's real estate development work, which brought modern, private development to the Russian economy, was categorically different from the types of exploitative businesses operated by the so-called "oligarchs" in Russia, who profited from their close affiliation with Mr. Putin, Russia's natural resources, and its state-owned businesses.  But despite these crucial facts, Defendant and the Letter recklessly and baselessly assert that Mr. Doronin engaged in the types of corruption that characterizes "oligarchs" including bribery and the pilfering of Russian natural resources.  In truth, Mr. Doronin's wealth is not "tainted" or "corrupt" as the Letter alleges; those assertions are scurrilous falsehoods.  Mr. Doronin was never even accused of such allegations prior to the Letter's patently false and baseless assertions.  In publishing the defamatory Letter and refusing to retract it, *The Aspen Times* has acted with knowledge of falsity or, at a minimum, with reckless disregard for whether the defamatory Letter is true or false.

3. *The Aspen Times* purports to be the "most-trusted print news outlet in Pitkin County, Colorado."  But *The Aspen Times*' decision to publish the Letter betrays this lofty goal.  On the contrary, Defendant's publication of the Letter was the culmination of a series of articles falsely characterizing Mr. Doronin as an "oligarch" and insinuating that his wealth was illegitimately earned.  The Letter uses misplaced Russophobia based on insulting cultural stereotypes and defamatory falsehoods as the vehicle for attacking a development project on the Aspen land Mr. Doronin purchased.  Made aware of the falsities in these articles and the obvious bias and animus of the Letter's author, a resident of a neighboring town who opposed Mr. Doronin's development of Aspen real estate, Defendant nevertheless persisted and published the Letter.  Defendant's decision to double down on its scurrilous claims by publishing the defamatory

3

Letter and refusal to correct the Letter's patent falsehoods has left Mr. Doronin no choice but to seek relief from this Court.

## PARTIES

4. Plaintiff Vladislav Doronin is a Swedish national and resident of Switzerland. He is the owner, Chairman and Chief Executive Officer of OKO Group LLC ("OKO"), a Delaware limited liability company with its headquarters in Miami, Florida and New York, New York that focuses on developing world-class luxury commercial, retail and residential space.

5. Defendant Swift Communications, LLC is a Nevada limited liability company. On information and belief, Swift's sole member is The Ogden Newspapers, Inc., a West Virginia corporation with its principal place of business in West Virginia. It operates and publishes numerous newspaper brands including *The Aspen Times*, an influential online and print newspaper in Aspen, Colorado. *The Aspen Times* purports to be "the oldest and most-trusted print news outlet in Pitkin County, Colorado. The newspaper is a free, 9,000-circulation daily distributed from Aspen to Carbondale." *The Aspen Times* is primarily published from an office in Aspen, Colorado.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendant is a citizen of West Virginia and Plaintiff is a citizen of a foreign state who is not a permanent resident of the United States or a domiciliary of West Virginia. The amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Defendant, and venue is properly laid in this district under 28 U.S.C. § 1391 because Defendant regularly transacts business with and into this District and a substantial part of the events, omissions, communications, and transactions giving rise to these claims have occurred, and continue to occur, in this District.

**FACTUAL ALLEGATIONS**

**I.     VLADISLAV DORONIN**

8.      Mr. Doronin was born in Leningrad in 1962.  At that time, Leningrad, which was later renamed St. Petersburg, was located in the Soviet Union.  As a young man, Mr. Doronin desired to travel the world and experience different global cultures but the restrictive policies of the Soviet government prevented him from doing so.  As a result, he emigrated from the Soviet Union in 1985—six years before the collapse of that country in 1991.  After emigrating, Mr. Doronin renounced his Soviet citizenship in 1986.  Because this renunciation rendered Mr. Doronin stateless, the United Nations granted him travel documents reflecting that he was a political refugee from the Soviet Union.

9.      In 1991, when the Soviet Union collapsed and Russia came into being as an independent sovereign state, Mr. Doronin was in British Hong Kong and Europe.  Mr. Doronin never resided in Russia, never applied for Russian citizenship, never obtained Russian nationality, and the Russian government never issued him a Russian passport.  Indeed, because Mr. Doronin renounced his Soviet citizenship in 1986, he was not eligible for Russian citizenship when Russia came into being as an independent state in 1991.  He also specifically renounced any possible claims to Russian citizenship in order to obtain his Swedish citizenship in 1992.  Mr. Doronin is currently a Swedish national and carries only a Swedish passport.

10.     In 1993, Mr. Doronin founded Capital Group, a company in Russia.  Shortly after founding Capital Group, Mr. Doronin focused its business on real estate development.

11.     One of Capital Group's and Mr. Doronin's first real estate projects was the development of an office building for International Business Machines Corporation ("IBM") in Moscow.  Among Capital Group's other early projects were office buildings catered toward other western customers including Phillip Morris International, Inc.  In the ensuing decades, Capital

5

Group developed over 70 projects in Moscow. These projects began primarily as office and retail space before expanding into residential and mixed-use developments. Until 2014, Mr. Doronin operated Capital Group in addition to his other businesses.

12. Mr. Doronin has never—while operating Capital Group or in any other business—bribed or otherwise sought to improperly influence any member of the Russian government or any other government. Nor has he ever been the subject of any investigation into or allegation of such misconduct. He founded Capital Group nearly a decade before Vladimir Putin first became president of Russia and has never had any affiliation with Mr. Putin or Russia's political leadership. He has also never had any ownership interest in any company owned by the government of Russia or its predecessor, the Soviet Union.

13. Mr. Doronin's businesses have never shared any common features with the businesses of individuals characterized as "oligarchs." Oligarchs are not merely wealthy individuals of Russian origin; they are individuals who have amassed their wealth through the exploitation of Russian natural resources, corrupt direction of Russian state-owned enterprises, and close political affiliation with Vladimir Putin. For example, individuals commonly described as "oligarchs" include Denis Bortnikov, the Deputy President of a Russian state-owned bank and the son of the director of the Federal Security Service ("FSB"), Russia's state security agency, and Alexei Miller, the Chairman of the Board of PJSC Gazprom, Russia's state-owned energy company.

14. Between 2013 and 2014, Mr. Doronin negotiated the divestiture of his entire interest in Capital Group. Since then, Mr. Doronin has not conducted any business in Russia and is no longer associated with Capital Group.

15. In 2014, Mr. Doronin purchased a majority interest in Aman Group, a Swiss-based multinational luxury hospitality company. Aman Group is an internationally recognized resort brand with over 34 luxury resorts in 22 countries across the globe. It employs over 6,500 people worldwide. Aman Group has no properties in Russia.

16. In 2013, Mr. Doronin bought his first property in Miami and, in 2015, launched OKO Group LLC ("OKO"), a Miami-based real estate development company which develops and manages residential and commercial real estate projects in Miami and New York, with additional future projects planned across the United States and globally. OKO employs more than 100 people at its headquarters and has created more than 3,500 construction jobs at its U.S. development projects. Mr. Doronin and OKO have invested more than $1 billion in real estate development projects in Miami, which include two of the most luxurious residential buildings in that city and an upscale office building. Mr. Doronin's work in Miami has been widely lauded, including in a 2021 feature story in the *Miami Herald* highlighting the success of his development projects.

## II.   *THE ASPEN TIMES*

17. *The Aspen Times* was founded in 1881 and is currently owned by Defendant Swift. It purports to be "the oldest and most-trusted print news outlet in Pitkin County, Colorado." According to its website, *The Aspen Times* is "a free, 9,000-circulation daily distributed from Aspen to Carbondale."

18. The current editor of *The Aspen Times* is David Krause.

19. The paper and its team of reporters cover local news, sports and entertainment. In addition to publishing news articles by its staff of reporters, it also publishes a selection of Letters to the Editors by its readers. The Letters to the Editor are covered by the following policy:

> ***The decision to print any submission is completely at the discretion of the Aspen Times editor.*** Letters must include the author's name, hometown, affiliation (if any) and phone number (for verification of authorship only). ***Form***

***letters and letters considered libelous, obscene or in bad taste will not be printed.*** All letters must cite sources as needed. Anonymous letters will not be printed. ***The Aspen Times reserves the right to edit all letters.*** Because of space constraints, please limit your letters to 300 words. Letters containing long lists of names will not be printed.[1]

### III. THE DEFAMATORY LETTER

20. In early March 2022, Mr. Doronin, through OKO, purchased a nearly one-acre lot of land in Aspen at the base of Lift 1A for $76.25 million (the "Land"). OKO intends to develop a luxury resort on the Land.

21. On information and belief, *The Aspen Times* opposes the development of the Land, including before Mr. Doronin purchased it.

22. On March 22, 2022, *The Aspen Times* published the Letter, which was written and submitted to the newspaper by Bernard Grauer of Basalt, Colorado.[2] As stated in its policy relating to Letters to the Editor, such letters are printed at the sole discretion of Defendant, and Defendant retains the right to edit any letter before publication. Thus, Defendant made the affirmative decision to publish the Letter.

23. The Letter manifests Mr. Grauer's obvious hostility to the development of the Land. But rather than challenging the development on the merits, the Letter cloaks its opposition in Russophobic attacks against Mr. Doronin (despite the fact that Mr. Doronin is not Russian), and relies on highly defamatory assertions of false fact of and concerning Mr. Doronin based on his place of birth, including the following statements (the "Defamatory Statements"):

    a. "The city should consider the damage to the reputation of the Aspen brand by allowing Vladislav Doronin, a billionaire who made his seed money

---

[1] *See* https://www.aspentimes.com/opinion/letter-to-the-editor/ (emphasis added).

[2] A true and accurate copy of the Letter is attached as Exhibit A.

8

      under the corrupt regime of Russia's war-criminal president, Vladimir Putin, to swoop in and buy the project.  According to press reports, one cannot become a big fish in Putin's polluted sea without greasing the hands of the regime and Putin's lackeys, the oligarchs;" and

  b. "The taint of that money remains on the funds Doronin exfiltrated from Russia. Aspen should not become a "laundromat" for corrupt funds to be bleached, hung out and dried."

24. The Defamatory Statements falsely assert that (a) Mr. Doronin bribed members of the Putin regime; (b) Mr. Doronin's wealth was derived from corrupt and criminal conduct, including bribery; (c) Mr. Doronin engaged in money laundering by "exfiltrating" supposedly tainted money from Russia; and (d) Mr. Doronin's purchase of the Land is also an act of money laundering.  Each of these assertions is categorically false, constitute defamation *per se*, and are highly damaging.  As discussed above, Mr. Doronin's wealth was earned legitimately through the development of real estate projects in Russia beginning years before Mr. Putin came to power. Neither Mr. Doronin nor Capital Group was affiliated with the Putin regime, bribed or otherwise improperly influenced officials of the Russian government, or engaged in any criminal or other misconduct.  Moreover, Mr. Doronin's decision to purchase the Land was for the purpose of developing a luxury resort in the ordinary course of OKO's business, not to launder money.

### IV. DEFENDANT KNEW THAT THE DEFAMATORY LETTER'S ASSERTIONS WERE FALSE

25. Defendant knew or, at a minimum, had serious doubts about the truth of the assertions contained in the Letter.  Prior to publishing the Letter, based on earlier communications from Mr. Doronin's press agents, described below, Defendant was aware that Mr. Doronin had no connections to the Putin regime, that he was not involved in any corruption or bribery in Russia,

and that Mr. Doronin had legitimately earned his wealth through the development of real estate projects in Russia and elsewhere. Indeed, as discussed below, Defendant had previously amended articles that suggested that Mr. Doronin had such connections and had been involved in the types of corruption that characterize Russia's "oligarchs."

26. Despite this knowledge of the Defamatory Statements' falsity, Defendant chose to publish the Letter including those Statements. This decision was the culmination of a campaign by Defendant to falsely attack and impugn Mr. Doronin based on his place of birth that began after his purchase of the Land became public knowledge in Aspen and that was motivated by *The Aspen Times*'s opposition to the development of the Land.

27. Through a series of four articles leading up to the Letter, *The Aspen Times* sought to capitalize on the anti-Russian sentiment inspired by Russia's recent invasion of Ukraine in order to attack the development of the Land by making misplaced Russophobic attacks against Mr. Doronin and falsely linking him to the regime of Vladimir Putin and the "oligarchs" who have amassed significant wealth through the exploitation of Russian natural resources facilitated by their close relationships to Mr. Putin and the corruption of the Russian government. On information and belief, *The Aspen Times*' desire to tap into this anti-Russian sentiment to attack Mr. Doronin's plan to develop the Land caused it to disregard the truth and publish articles linking Mr. Doronin to the Putin regime based solely on Mr. Doronin's place of birth.

28. On March 5, 2022, *The Aspen Times* published a news article by Rick Carroll about OKO's purchase of the Land.[3] In that article, *The Aspen Times* referred to Mr. Doronin as "Russian" and as an "oligarch." Public relations agents of Mr. Doronin contacted Mr. Carroll,

---

[3] A true and accurate copy of this article, before corrections, is attached as Exhibit B. A true and accurate copy of the article after *The Aspen Times* corrected it is attached as Exhibit C.

10

informed him that the assertions that Mr. Doronin was "Russian" and an "oligarch" were false, explained that Mr. Doronin was not Russian, had never had any affiliation with the Putin regime and had never been engaged in the type of corrupt and exploitative businesses that characterized the activities of "oligarchs." They requested that *The Aspen Times* correct the article. *The Aspen Times* made slight modifications to the article to remove the references to Mr. Doronin being an "oligarch" and "Russian."

29. On March 7, 2022, *The Aspen Times* published an article by John Colson about OKO's purchase of the Land.[4] In that article, Mr. Colson, a recurring columnist for *The Aspen Times*, repeated the false assertion that Mr. Doronin is an "oligarch" and speculated that Mr. Doronin may "currently [have] Putin's ear." Public relations agents of Mr. Doronin contacted Mr. Krause and informed him, as they had previously informed Mr. Carroll, that these statements were false and defamatory. Mr. Doronin's agents further informed Defendant that Mr. Doronin intended to develop a luxury resort on the Land and that they would share additional information about that project as plans developed. *The Aspen Times* subsequently removed references to Mr. Doronin being an "oligarch" and "ha[ving] Mr. Putin's ear" while also appending a note on the article that the removal of the term "oligarch" was done only because Mr. Doronin's press agents threatened to file a lawsuit against the newspaper.

30. On March 12, 2022, *The Aspen Times* published an article by Mr. Carroll titled "Oligarch or not, new Aspen investor has Russian ties."[5] The article is unfair and inaccurate as it repeatedly insinuates and suggests that Mr. Doronin is an "oligarch" despite defining "oligarch" as a select group of only a few dozen billionaires "who have profited from their association with

---

[4] A true and accurate copy of this article, before corrections, is attached as Exhibit D. A true and accurate copy of the article after *The Aspen Times* corrected it is attached as Exhibit E.

[5] A true and accurate copy of this article is attached as Exhibit F.

Putin and his government by being deep insiders in government affairs," which plainly does not describe Mr. Doronin. The article further describes a list of "oligarchs" compiled by jailed Russian opposition leader Alexei Navalny and which does not include Mr. Doronin. Nevertheless, and despite the lack of any support, the article insinuates that Mr. Doronin is an "oligarch" and has ties to the Russian state and Mr. Putin and falsely implies that merely by having previously done business in Russia, Mr. Doronin was somehow corrupt and his business was nefarious. Mr. Doronin's agents informed Mr. Carroll, again, that the article falsely characterized Mr. Doronin, stated that Mr. Doronin has never had any connections with Mr. Putin's regime and that his wealth was legitimately earned through real estate development, and requested that *The Aspen Times* correct the article. Defendant refused to correct the article.

31. On March 17, 2022, *The Aspen Times* published an editorial regarding OKO's purchase of the Land.[6] As in the March 12, 2022 article, this editorial suggests and insinuates that Mr. Doronin's purchase of the Land was suspect, including writing that "Doronin might be squeaky clean and his publicists insist he has no ties to Vladmir (sic) Putin or Russia, but the optics of the sale's details—whether the price, the buyer's identity, the timing—were simply astounding." Mr. Doronin's agents informed *The Aspen Times* that the editorial created the false impression that Mr. Doronin was connected to the Putin regime and that his purchase of the Land was nefarious and requested that it amend the piece to correct that misleading impression. Defendant refused to correct the editorial.

32. In each of these four prior articles, Defendant published false and damaging statements and insinuations about Mr. Doronin without making any effort to support those statements with any reliable sources or information.

---

[6] A true and accurate copy of this article is attached as Exhibit G.

33.     Despite being on notice of the falsity of *The Aspen Times*' coverage of Mr. Doronin and being provided specific information rebutting assertions made in the earlier articles, Defendant continued its reckless disregard for the truth in publishing the Letter and its Defamatory Statements, which is likewise unsupported by any sources or information. Indeed, the Letter's vague allusion to unnamed "press reports" to support its false and defamatory assertion that Mr. Doronin engaged in bribery only highlights the lack of any basis for the Letter's Defamatory Statements and Defendant's deliberate decision to ignore that glaring deficiency and publish the Letter without regard or concern for its truthfulness. The failure to identify the "press reports" also violated *The Aspen Times*' own policy that letters to the editor "must cite sources as needed."

34.     Moreover, *The Aspen Times* willfully ignored the obvious animus of Mr. Grauer against the development of the Land. Despite this clear bias and Defendant's knowledge of the falsity of the Letter's assertions, Defendant deliberately conducted no inquiry into the Letter's factual claims, evincing a reckless disregard for the truth.

### V.     *THE ASPEN TIMES'* REFUSAL TO RETRACT ITS FALSE STATEMENTS IN THE DEFAMATORY LETTER

35.     On March 25, 2022, Mr. Doronin's counsel sent a letter to Defendant requesting that they immediately retract and correct the false and defamatory statements in the Letter as well as the March 12 and March 17 articles.

36.     On March 28, 2022, Defendant refused to correct the Letter. Notably, Defendant did not even attempt to defend the content of the Letter, instead summarily stating that Defendant would not "censor" a letter to the editor. Defendant's response is utterly inconsistent with its responsibilities as the publisher of the Letter and indeed with its own policies regarding the discretion it exercises to select and edit letters to the editor.

## VI. *THE ASPEN TIMES'* IRRESPONSIBLE CONDUCT HAS INFLICTED ENORMOUS DAMAGE

37.     Mr. Doronin has indisputably suffered substantial harm to his reputation and his businesses as a result of the Letter.  Mr. Doronin, through OKO, invested $76.25 million in the Land.  The Defamatory Statements have cast a cloud over this investment, generating misplaced and unfounded doubt about the lawfulness of Mr. Doronin's businesses and his development of the Aspen property, substantially reducing the development value of the Land due to this cloud and forcing Mr. Doronin to incur additional expenses to develop the planned luxury hotel on it.  Mr. Doronin continues to suffer harm as the Letter remains published on Defendant's website.

38.     Mr. Doronin, through hard work and dedication, has spent years building his professional reputation as a successful businessman in the United States and Europe.  By 2021, his real estate development work in the United States and globally was widely lauded, including in significant coverage in the *Miami Herald*, where OKO's headquarters and several of its development projects are located.

39.     Given the current sensitives related to the political situation between Russia and Ukraine, the false assertion that Mr. Doronin is corrupt and is connected to Mr. Putin and the Russian government tarnishes not only his reputation, but his businesses.

40.     Additionally, because *The Aspen Times* has falsely accused Mr. Doronin of crimes, including bribery and money laundering, the defamatory Letter constitutes liber *per se* and damages are therefore presumed.

### FIRST CAUSE OF ACTION

### (**Libel** *per se*)

41.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

14

42. On March 22, 2022, Defendant published the Letter both in print in *The Aspen Times* and online at aspentimes.com.

43. Defendant affirmatively chose to publish the Letter and exercised its discretion in publishing that letter.

44. The Defamatory Statements are of and concerning Mr. Doronin, as they specifically reference and concern him, and would be so-understood by persons reading the defamatory Letter.

45. The Defamatory Statements are false and defamatory *per se*.

46. The Defamatory Statements are damaging to Mr. Doronin and his business and are libel *per se* because they falsely charge that Mr. Doronin conducted business dishonestly or fraudulently and that Mr. Doronin engaged in criminal conduct.

47. Defendant acted intentionally with actual malice in choosing to publish the Letter because it acted with reckless disregard for the truth in that it had knowledge of the Letter's falsity, or, at a minimum, serious doubts about the truthfulness of the Letter's assertions that Mr. Doronin bribed members of the Putin regime, had engaged in money laundering, and was engaging in money laundering through the purchase of the Land.

## SECOND CAUSE OF ACTION

### (Libel *per Quod*)

48. Plaintiff incorporates the preceding allegations as if fully set forth herein.

49. On March 22, 2022, Defendant published the Letter both in print in *The Aspen Times* and online at aspentimes.com.

50. Defendant affirmatively chose to publish the Letter and exercised its discretion in publishing that letter.

51. The Defamatory Statements are of and concerning Mr. Doronin, as they specifically reference and concern him, and would be so-understood by persons reading the defamatory Letter.

15

52. The Defamatory Statements are false.

53. The Defamatory Statements are damaging to Mr. Doronin and his business and are libel *per se* because they falsely charge that Mr. Doronin conducted business dishonestly or fraudulently and that Mr. Doronin engaged in criminal conduct.

54. Defendant acted intentionally with actual malice in choosing to publish the Letter because it acted with reckless disregard for the truth in that it had knowledge of the Letter's falsity, or, at a minimum, serious doubts about the truthfulness of the Letter's assertions that Mr. Doronin bribed members of the Putin regime, had engaged in money laundering, and was engaging in money laundering through the purchase of the Land.

55. Defendants' defamatory statements have damaged and will continue to damage Mr. Doronin by causing harm to his reputation in the industry, causing him to lose future business opportunities, causing his investment in the Land to lose value, and causing him to incur additional expenses in connection with the development of the Land in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

  a. An award of actual, presumed, general and special damages as allowed by law and, as applicable, to be proven at trial;

  b. An award of punitive damages;

  c. Injunctive relief ordering Defendants to retract the Letter and its false and defamatory statements, and barring Defendants from republishing them or anything similar; and

  d. Any other relief the Court deems just and appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable.

Dated:  April 13, 2022                    Respectfully Submitted,


By:  /s/ Lauren Dickie
QUINN     EMANUEL     URQUHART     &
SULLIVAN, LLP
Lauren Dickie, #51787
Juan P. Morillo (admission pending)
Nicholas J. Inns (admission pending)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
Telephone:  (202) 538-8000
juanmorillo@quinnemanuel.com
nicholasinns@quinnemanuel.com

Kaitlin E. Keohane (admission pending)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
kaitlinkeohane@quinnemanuel.com

Cory Struble (admission pending)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
corystruble@quinnemanuel.com

*Attorneys for Plaintiff Vladislav Doronin*